# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 16

### OCTOBER TERM, A.D. 2016

### February 16, 2017

IN THE MATTER OF THE WORKER'S
COMPENSATION CLAIM OF:

VALERIE PRICE,

Appellant
(Petitioner),

v.                                                        S-16-0160

STATE OF WYOMING, ex rel.,
DEPARTMENT OF WORKFORCE
SERVICES, WORKERS'
COMPENSATION DIVISION,

Appellee
(Respondent).

*Appeal from the District Court of Fremont County*
*The Honorable Norman E. Young, Judge*

*Representing Appellant:*
Sky D Phifer, Phifer Law Office, Lander, Wyoming.

*Representing Appellee:*
Peter K. Michael, Wyoming Attorney General; Daniel E. White, Deputy Attorney General; Michael J. Finn, Senior Assistant Attorney General; James M. Causey, Senior Assistant Attorney General.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]    Valerie Price suffered a work injury in 2004.  As a result, she had shoulder surgery in 2005, which was covered by the Wyoming Workers' Compensation Division (Division).  In 2013, Ms. Price sought benefits for surgery on the same shoulder to treat calcific tendinitis.  Her surgeon found a hole in the fascia over the acromioclavicular joint during the 2013 surgery, which may have occurred during the 2005 surgery.  She therefore contended that the 2013 surgery was a second compensable injury.  The Division denied her claim.  After a hearing, the Medical Commission (Commission) determined that Ms. Price had not proven the 2013 surgery was causally related to her 2004 injury and subsequent treatment.  Ms. Price appealed, and the district court affirmed the Commission's ruling.  Ms. Price timely appealed, and we affirm.

## ISSUES

[¶2]    We rephrase the issues as:

1.    Was the Medical Commission Hearing Panel's conclusion that there was no causal link between Ms. Price's work-related injury and the need for her 2013 surgery supported by substantial evidence?

2.    Did the Medical Commission Hearing Panel improperly apply apportionment when it concluded that Ms. Price's 2013 surgery was not compensable?

## FACTS

[¶3]    Valerie Price hurt her right shoulder at work in 2004 when she took the trash outside and slipped and fell on ice.  As a result, in 2005 she had a right shoulder arthroscopy, which was covered by the Division.  She reported continued right shoulder pain over the following years.  In 2013, she saw Dr. Bienz for right shoulder pain, and he diagnosed calcification and recommended arthroscopic debridement.  Dr. Bienz noted that he had reviewed "the x-rays from 2005, and at that time, there was not much calcification in the rotator cuff, but on today's images, there is a significant amount of soft tissue calcification . . . ."  He observed:

> The other question here, of course, is whether this is truly related to the initial injury.  She is of the impression that her shoulder "would always be covered" because of the initial incident that led to the [2005 surgery], however, the fact that she had no calcific tissue in 2005 when she was last treated by me and has since developed substantial calcific tendinitis would suggest that this calcific tissue developed since her last incident, not necessarily because of her last incident.

1

The Division denied coverage for the surgery. Dr. Bienz performed the right shoulder arthroscopy with debridement on May 17, 2013. During the course of that surgery, he noted "a large hole in the acromioclavicular joint where the previous procedure apparently caused the fascia to separate or perhaps it was never repaired." He determined that the hole was communicating fluid to the joint surface and repaired it.

[¶4]   Dr. Bienz testified that he did not believe the calcific tendinitis for which he treated Ms. Price in 2013 was caused by her 2004 workplace injury.

> Q. Okay.   Now, do you have any opinion as to whether Ms. Price's calcific tendinitis is related to her workplace injury?
>
> A.   Well, I mean, it is -- it's certainly related.  I mean, it's in the same side.  It's the same joint.  You know, there is some relationship there.  But for a variety of reasons outlined in that other note, I don't think it likely that the fall carrying the garbage caused her to later develop calcific tendinitis. And part of that is also even more information than what we had in April, is that she has subsequently developed rather significant calcific tendinitis in the opposite shoulder, as well, which was treated by my partner, Dr. Carlson.  And you know, there was no injury to the opposite shoulder when she fell.

[¶5]   Dr. Bienz testified that he assumed the hole in the acromioclavicular joint, which he repaired, was most likely caused by the original 2004 surgery, "unless she developed a tear . . . after the fact . . . ."   When asked why it was necessary to do that repair, he responded:

> A.   I don't know if "necessary" is the right word, but basically when you're doing a procedure, especially on a patient like this who has pain but you're never quite sure why they have pain, you do attempt to correct any abnormality that you find so that you can minimize the chance that they're going to continue to have pain.
>
> And in this case, you know, what I noticed is that there was fluid coming down from up there, which shouldn't be happening, because normally that's a sealed area.  And so we went up and looked, and we did in fact find a communication to the subacromial space through that fascial tear.

Q. And could -- could this be causing part of the pain that Ms. Price was suffering from that caused you to go in and try to do the repair?

A. I guess it's possible. It didn't seem real likely, but that's certainly possible . . . .

. . . .

Q. So in your opinion, it was something that needed to be done?

A. I think it should have been done, yes. If you find an opening communicating the subacromial space to the subcutaneous space, it should be sealed if possible.

Q. And you feel that this was related to the previous surgery done in 2005 that was preceded by the fall and caused by the fall. Is that safe to say?

A. I do believe that the defect in the fascia over the AC joint was related to and caused by the original surgery done with an arthroscope in 2005, yes.

[¶6]    Ms. Price's providers submitted bills for her 2013 surgery, and the Division denied payment. Ms. Price appealed and after an evidentiary hearing, the Commission determined that she had "failed to prove by a preponderance of the evidence that the medical treatment she received was causally related either to her work place injury on December 25, 2004, or the initial surgery she received on her right shoulder on March 11, 2005" for that injury. The district court affirmed the Commission's ruling. Ms. Price timely appealed to this Court.

## *STANDARD OF REVIEW*

[¶7]    We treat an appeal from a district court's review of an administrative agency's decision as if it had come directly from the administrative agency and give no deference to the district court's decision. *Kenyon v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 14, ¶ 10, 247 P.3d 845, 848 (Wyo. 2011); *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo. 2008). Our review is controlled by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2015):

(c) . . . the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

. . . .

    (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

    (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

. . . .

    (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

    (D) Without observance of procedure required by law; or

    (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Accordingly, we review the agency's findings of fact by applying the substantial evidence standard. *Worker's Comp. Claim of Bailey v. State ex rel. Wyo. Dep't of Workforce Servs.*, 2015 WY 20, ¶¶ 10-12, 342 P.3d 1210, 1213 (Wyo. 2015); *Dale*, 2008 WY 84, ¶ 21, 188 P.3d at 561. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Matter of Worker's Comp. Claim of Jensen v. State*, 2016 WY 87, ¶ 13, 378 P.3d 298, 303 (Wyo. 2016) (citing *Bush v. State ex rel. Wyo. Workers' Comp. Div.*, 2005 WY 120, ¶ 5, 120 P.3d 176, 179 (Wyo. 2005)). "Findings of fact are supported by substantial evidence if, from the evidence preserved in the record, we can discern a rational premise for those findings." *Id.* (citing *Kenyon*, 2011 WY 14, ¶ 11, 247 P.3d at 849; *Bush*, 2005 WY 120, ¶ 5, 120 P.3d at 179).

> If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it.

*Worker's Comp. Claim of Bailey*, 2015 WY 20, ¶ 11, 342 P.3d at 1213 (citations omitted). Finally, "we review an agency's conclusions of law *de novo*, and will affirm only if the agency's conclusions are in accordance with the law." *Id*. at ¶ 12, 342 P.3d at 1213 (citations omitted).

## *DISCUSSION*

### I. *Was the Medical Commission Hearing Panel's conclusion that there was no causal link between Ms. Price's work-related injury and the need for her 2013 surgery supported by substantial evidence?*

[¶8]   Ms. Price asserts that the Commission's conclusion that she had not established a causal connection between her workplace injury and her 2013 surgery was not supported by substantial evidence. Although she concedes that the calcific tendinitis which the 2013 surgery was aimed at resolving was not work related, she claims that the "defect in the fascia over the AC joint was related to and caused by" her 2005 arthroscopic surgery. (Emphasis omitted.) She therefore contends that she demonstrated by a preponderance of the evidence that her second injury was caused by the original injury, as required under the second compensable injury rule. The Division counters that the Commission properly considered and rejected testimony by Ms. Price's physician, Dr. Bienz, regarding the causal connection between her first and subsequent injuries.

[¶9]   The parties do not dispute that the second compensable injury rule governs. "The second compensable injury rule applies when 'an initial compensable injury has resulted in an injury or condition that requires additional medical intervention.'" *Worker's Comp. Claim of Jensen*, 2016 WY 87, ¶ 17, 378 P.3d at 304 (quoting *Ball v. State ex rel. Wyo.*

*Workers' Safety & Comp. Div.*, 2010 WY 128, ¶ 24, 239 P.3d 621, 628 (Wyo. 2010)). "Under the rule, a subsequent injury is compensable if it is causally related to the initial compensable work injury." *Rogers v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2012 WY 117, ¶ 14, 284 P.3d 815, 819 (Wyo. 2012) (quoting *Alvarez v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2007 WY 126, ¶ 18, 164 P.3d 548, 552 (Wyo. 2007)). An employee claiming benefits under the second compensable injury rule has the burden of proving by a preponderance of the evidence that there is a causal connection between the first and second injuries. *Guerrero v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2015 WY 88, ¶ 29, 352 P.3d 262, 271 (Wyo. 2015). To receive benefits, Ms. Price had to prove by a preponderance of the evidence that the condition treated in her 2013 surgery was causally connected to her 2004 work injury. *See Hoffman v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2012 WY 164, ¶ 9, 291 P.3d 297, 301-02 (Wyo. 2012) (explaining that to recover, the employee "had to prove that his initial work injury ripened into a condition requiring additional medical intervention").

[¶10] The Commission concluded that the evidence did not reveal that the opening in the fascial tissue was caused by the initial injury or subsequent 2005 surgery:

> In this case the work injury occurred in 2004 and involved Price's right shoulder. In 2005 surgery was performed by Dr. Harp to repair the shoulder. Price continued to experience pain and went to see Dr. Bienz. In 2005-2006 Dr. Bienz was unable to determine the source of the complaints of shoulder pain, but did not see calcific tendonitis, or a need for further surgery. After a hiatus in treatment, in 2013 Dr. Bienz found significant calcific tendonitis in the right shoulder and performed surgery for that condition. Dr. Bienz did not attribute the condition to either the work injury or the 2005 surgery. In the process of the surgery for calcific tendonitis Dr. Bienz discovered a hole in the fascial tissue over the acromioclavicular joint and repaired it with a couple sutures. Dr. Bienz "*assumed*" the hole was the result of the 2005 surgery or some later trauma. This is a case in which medical testimony is necessary to establish causation. The causal connection between Price's right shoulder condition in 2013 and the work injury or 2005 surgery cannot be established by testimony alone.

(Emphasis added.)

[¶11]   The Commission then supplied some of its own medical testimony:

> Some drainage of fluids during an arthroscopic surgery is entirely normal.  The repair to close the hole by Dr. Bienz amounted to no more than a couple sutures.  Medical necessity is more than this.

[¶12]   The Commission then went on to conclude:

> The medical treatment must not only be necessary but causally related to the work injury or a second compensable injury.  Dr. Bienz **"*assumed*"** the hole in the fascial tissue was caused by the surgery in 2005, but he never explained why he assumed this.  He seemed equally prepared to believe that the hole was caused by some other unrelated trauma after 2005.
>
> . . . .
>
> The testimony of Dr. Bienz that the opening in the fascial tissue over the acromioclavicular joint was ***possibly*** caused during the surgery in 2005 or some other trauma suffered by Price, is unpersuasive and insufficient to show the causal relationship necessary to make the surgery compensable.

(Emphasis added.)

[¶13]   Ms. Price argues that the Commission improperly supplemented its conclusions with its own evidence that was not contained in the record.  Ms. Price also contends that the Commission erroneously selected portions of Dr. Bienz's testimony while ignoring others.  She claims that his testimony "unequivocally" stated that the hole in the fascia was caused by the 2005 surgery.

[¶14]   After a thorough review of the record and the Commission's findings, we conclude that Ms. Price is correct in her arguments that the Commission erroneously supplemented the facts with evidence that was not in the record, and the Commission's conclusion that Dr. Bienz "assumed" the hole in the fascial tissue was a result of the prior surgery was not supported by substantial evidence.  Although we find that Ms. Price is correct on both points, we will affirm the Commission's denial of benefits because there is not sufficient evidence in the record to demonstrate that the repair of the hole in the fascial tissue was necessary.

[¶15]  We first examine the Commission's supplementation of the evidence.  In addition to observing that drainage was normal and the repair only required a couple of sutures, the Commission commented that closing the hole "was a minor technical matter."  There was no evidence in the record to support these statements.  We recognize that members of the Commission have medical expertise which enables them to understand and render decisions in technical cases like this one.  As the trier of fact, the Commission must weigh the evidence and determine witness credibility.  *See Hoffman*, 2012 WY 164, ¶ 23, 291 P.3d at 305; *Brierley v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2002 WY 121, ¶ 16, 52 P.3d 564, 571 (Wyo. 2002).  The Commission is entitled to disregard expert medical opinion if it "finds the opinion unreasonable, not adequately supported by the facts upon which the opinion is based, or based upon an incomplete or inaccurate medical history . . . ."  *Johnson v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2014 WY 33, ¶ 25, 321 P.3d 318, 325 (Wyo. 2014) (citations omitted).  However, the Commission is not free to provide its own version of the facts or to supplement the facts with evidence that is not contained in the record.  It was improper for the Commission to do so here.  We agree that the Commission acted in excess of its authority when it relied upon its own expert opinions and facts that were not in the record.

[¶16]  We now turn to the state of the record regarding the cause of the hole in Ms. Price's fascia.  Dr. Bienz's testimony regarding the genesis of the hole in the fascia included the following:

> Q:    [By Mr. Phifer, attorney for Ms. Price] So in your notes . . . you talk about, we then elevated the skin flap and went up into the acromioclavicular joint.  There was a large hole in the acromioclavicular joint where the previous procedure had apparently caused the fascia to separate or perhaps it was never repaired.  In this case, this was communicating fluid to the joint surface, so I closed this by advancing the deltoid into the defect and then proceeded to close the deltoid in linear fashion with running zero dash --
>
> A:    [By Dr. Bienz] Zero Vicryl is a type of suture.  It's an absorbable suture.  And zero just refers to the size of the suture.
>
> Q:    Very good.  So -- so was this portion here that I just read, was that a repair, then, that you feel was related to or caused by the original surgery that was done after that 2004 fall?

8

A: *I would assume so, yeah, unless she developed a tear, you know, after the fact in that region. But most likely that was related to the original arthroscopic release or removal of the end of the clavicle.* Sometimes if you go a little bit high, it actually ends up cutting through the fascial tissue, which is hard to recognize if you're in the scope.

. . . .

Q: Okay. And a little clarification on the testimony you've given regarding the recent May 2013 surgery. *We were talking about a defect in the fascia over the AC joint. And it was your opinion that that was related to the original surgery, is that correct?*

A: That is correct.

(Emphasis added.)

[¶17]   The Division argues that the Commission considered the entirety of Dr. Bienz's testimony and properly concluded that it did not establish a causal connection. It argues that the Commission used the terms "assumed" and "possibly" to describe Dr. Bienz's testimony and explain its concerns that the testimony did not adequately explain why he believed the hole in the fascia was caused during the 2005 surgery, as opposed to some other event after that surgery. We find that the Commission's conclusion was contrary to the overwhelming weight of the evidence and the record as a whole, and the Commission's neglect of that evidence was not explained in its findings. "If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test." *Worker's Comp. Claim of Jensen*, 2016 WY 87, ¶ 13, 378 P.3d at 304 (quoting *Dale*, 2008 WY 84, ¶ 22, 188 P.3d at 561 (citations omitted)). However, if the agency disregards certain evidence and fails to explain its rationale, its decision may not be supported by substantial evidence.

[¶18]   Dr. Bienz's testimony was that "most likely" the prior surgery created the hole in the fascia that was repaired in conjunction with the 2013 procedure. Generally, an expert will sufficiently establish a nexus between work activities and an injury by testifying "that the work 'contributed to' the injury or that the injury is 'most likely' or 'probably' is the product of the workplace suffices." *Boyce v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 9, ¶ 11, 105 P.3d 451, 455 (Wyo. 2005). The Commission's determination that there was no causal link between the 2005 surgery and the hole discovered during the 2013 surgery is not sustainable under the substantial evidence test. However, the Commission correctly questioned the necessity of repairing the hole.

9

[¶19] Although the record supports the existence of a causal connection between the 2005 surgery and the hole in the fascia, it did not establish that the repair to the hole was necessary. Dr. Bienz was not aware of the hole in Ms. Price's fascia until he had completed the repair of the calcification in her shoulder. He explained, "when we were done, I noticed that there was fluid flowing from the subcutaneous space a bit more than there should be, so we kind of were able to look up in there and we saw that irregularity" and repaired it. He testified that the repair was not in any way related to the calcific tendinitis.

[¶20] When questioned about whether the repair of the hole was necessary, Dr. Bienz responded, "I don't know if 'necessary' is the right word." He went on to explain that

> when you're doing a procedure especially on a patient like this who has pain but you're never quite sure why they have pain, you do attempt to correct any abnormality that you find so that you can minimize the chance that they're going to continue to have pain.

Ms. Price's attorney then asked Dr. Bienz whether the hole could have been causing some of her pain. Dr. Bienz responded that it was unlikely: "I guess it's possible. It didn't seem real likely, but that's certainly possible. But still I wasn't -- finding that defect, I didn't think it would be wise to leave it open . . . ."

[¶21] The Wyoming's Worker's Compensation Act requires an employee's medical and hospital care to be "reasonable and necessary" in order to be covered. Wyo. Stat. Ann. § 27-14-102(a)(xii) (LexisNexis 2015). To receive compensation for care, the employee is "required to establish that [the treatment] was reasonable and necessary medical treatment related to his workplace injury." *Beall v. Sky Blue Enterprises, Inc*., 2012 WY 38, ¶ 23, 271 P.3d 1022, 1032 (Wyo. 2012).

[¶22] The evidence reveals that the condition giving rise to Ms. Price's subsequent shoulder surgery was calcific tendinitis, which was not related to her work injury. There was no evidence that the hole in the fascia contributed to her pain or that its repair was necessary to treat her symptoms. Thus, the Commission's conclusion that the 2013 treatment and surgery were not compensable by worker's compensation is supported by substantial evidence.

***II. Did the Medical Commission Hearing Panel improperly apply apportionment when it concluded that Ms. Price's 2013 surgery was not compensable?***

[¶23]  Ms. Price also argues that the Commission improperly apportioned the relative contributions of conditions requiring medical intervention.  We have recognized and rejected application of apportionment in cases involving preexisting conditions.  Because we have determined that there was no necessity for the portion of the surgery directed to repairing the hole, we need not consider whether apportionment was applied improperly in this case.

## *CONCLUSION*

[¶24]  Ms. Price did not establish by a preponderance of the evidence that the repair to the hole in the fascia over her acromioclavicular joint performed during her 2013 surgery was necessary.  Therefore, the Commission's conclusion that her medical treatment was not compensable is supported by substantial evidence.  Because her treatment is not compensable, apportionment is not an issue.  Affirmed.