2017 WY 109

**In the Matter of the Worker's Compensation Claim of: Dennis HOWE, Appellant (Petitioner),**

v.

**STATE of Wyoming, EX REL., DEPARTMENT OF WORKFORCE SERVICES, WORKERS' COMPENSATION DIVISION, Appellee (Respondent).**

S-17-0008

Supreme Court of Wyoming.

September 18, 2017

Representing Appellant: Sky D Phifer, Phifer Law Office, Lander, Wyoming.

Representing Appellee: Peter K. Michael, Wyoming Attorney General; Daniel E. White, Deputy Attorney General.

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

FOX, Justice.

[¶1] Worker's compensation claimant Dennis Howe appeals from a determination by the Medical Commission (Commission) denying his claim for permanent partial impairment (PPI) benefits. We affirm.

## ISSUES

[¶2] We rephrase the issues as:

1.  Was there sufficient evidence to support the Commission's finding that Mr. Howe did not suffer any permanent impairment as a result of the chlorine exposure?

2.  Was the Commission's decision arbitrary and capricious?

## FACTS

[¶3] Mr. Howe seeks PPI benefits for a work-related injury he suffered in June 2011. He was employed as a maintenance man at the Best Western—Lander Inn in Lander, Wyoming. As part of routine pool and hot tub maintenance, Mr. Howe resupplied chlorinator tubes with chlorine pellets. On June 24, 2011, one of the tubes exploded and Mr. Howe was exposed to chlorine powder and gas for a minute or less. He left the area of exposure and a coworker assisted him in washing chlorine residue from his face and other exposed body parts. He refused any further medical attention and went home early from work that day. Mr. Howe testified that in the early morning hours of June 25, 2011, he awoke with breathing difficulties and a few hours later drove himself to the emergency room at Lander Regional Hospital.

[¶4] At the emergency room, Mr. Howe was treated by Dr. Brian Gee, M.D. Dr. Gee ordered a chest x-ray, put Mr. Howe on oxygen, and gave him a nebulizer treatment. In Dr. Gee's discharge note he stated:

> Patient improved with O2 here. He had chlorine exposure yesterday and had gotten increasingly short of breath. His labs interestingly were generally normal. BMP was up slightly. His x-ray did show maybe interstitial changes. He was hypoxic here. After discussing with him and Poison Control, patient did not want to stay in the hospital for evaluation, told could be worsening over the course of 72-96 hours with pulmonary edema or respiratory failure, and also did discuss his mildly elevated troponin level. States he does not want to stay in the hospital. I did discuss the risk of underlying cardiac issues and lung issues and potential worsening. He is going to go home. However, we did set him up with home oxygen and home nebs. We did try a neb here, which did improve him. He is going to recheck here in the morning unless he is doing quite well and then he is going to follow up with his regular doc and home O2. I told him that we probably have a 48 to 96-hour window and that if there is worsening he needs to be reevaluated in the ER. He is comfortable with this plan.

Mr. Howe followed up with Amy Hitshew, P.A., at Lander Medical Clinic on July 6, 2011. Mr. Howe continued to take oxygen by nasal cannula, was coughing up phlegm, and reported being short of breath when active. On examination, Ms. Hitshew reported no dyspnea, no wheezing, rales, crackles, or rhonchi, and that breath sounds were normal and he had good air movement. Ms. Hitshew directed Mr. Howe to continue to wear oxygen as needed, monitor his blood pressure, and follow up with her in two weeks.

[¶5] When Mr. Howe followed up with Ms. Hitshew on July 20, 2011, he reported that he was still coughing up phlegm and felt winded without his oxygen. During a physical exam, Ms. Hitshew asked him to walk around without his oxygen and she noted his O2 saturation dropped to 87% and he became winded. Mr. Howe continued to see Ms. Hitshew in August and September 2011. On August 9, 2011, Ms. Hitshew noted that Mr. Howe was deconditioned and referred him to physical therapy for work hardening to get him back into shape and decrease his shortness of breath. At two subsequent appointments, Mr. Howe indicated that the physical therapy was going very well, he was feeling better, and he was much less short of breath. Ms. Hitshew examined his lungs and reported no dyspnea, no wheezing, rales, crackles, or rhonchi, with normal breath sounds and good air movement. Ms. Hitshew released Mr. Howe to return to work without restrictions on September 15, 2011.

[¶6] Mr. Howe testified that after returning to work, he would get too physically tired to work all day. He stated that if he worked in the morning and was needed in the afternoon, he would have to go home to take a nap, something he did not have to do prior to his work injury. Mr. Howe testified that prior to June 24, 2011, he did not have any breathing problems. Three of Mr. Howe's coworkers testified that Mr. Howe was generally able to perform his work before the June 2011 incident, but that he often appeared more winded upon physical exertion after that incident.

[¶7] Mr. Howe returned to see Ms. Hitshew on January 5, 2012. He complained of shortness of breath, admitted that he had

several job duties cut due to the shortness of breath, and that he became severely short of breath with any type of physical exertion. Upon examination of his lungs, Ms. Hitshew reported that there were no rales, crackles or rhonchi, normal breath sounds, good air movement, and expiratory wheezing, and noted that he seemed winded with any activity. Ms. Hitshew ordered pulmonary function testing and referred Mr. Howe to Dr. Muhammad Hussieno, a pulmonologist in Casper.

[¶8] Dr. Hussieno examined Mr. Howe on January 18, 2012, and found that his lungs had normal respiratory effects, they were clear to auscultation, had diminished air movements, and were normal to percussion. Dr. Hussieno noted that the spirometry test performed two weeks prior showed moderate restriction and then performed a second spirometry test. He found further decline in his test compared to the test two weeks prior, and diagnosed Mr. Howe with restrictive lung disease, obesity, and reactive airway dysfunction syndrome (RADS). Dr. Hussieno prescribed the medication Dulera,[1] and ordered a high-resolution CT of the chest for further evaluation. The CT was performed that day at Casper Medical Imaging. Dr. Michael Flaherty, M.D., reported his findings and impressions of the CT as follows:

### FINDINGS:

The lungs are clear with no evidence of infiltrate, pneumonia, or lung contusion. There is no atelectasis appreciated. No pulmonary nodules or masses are identified. There is no evidence of pneumothorax or pleural fluid collection. Thin slice, high resolution images demonstrate no significant interstitial lung disease.

Soft tissue windows are limited by the lack of IV contrast, however, there is no evidence of axillary, mediastinal, or hilar lymphadenopathy. Heart size is normal. Minimal atherosclerotic calcifications are noted in the aortic arch. Note is made of a fracture in the posterolateral aspect of the right 4th rib. The fracture is slightly displaced. No other fracture is appreciated. There are degenerative changes noted at multiple levels in the thoracic spine that are most prominent in the mid to lower thoracic spine.

The visualized portion of the upper abdomen is grossly normal in appearance.

### IMPRESSION:

1. The lungs are clear with no acute cardiopulmonary abnormality identified.
2. No significant interstitial lung disease is appreciated.
3. Fracture in the posterolateral aspect of the right 4th rib appears acute to subacute. There is slight displacement of the fracture fragment.
4. Additional findings as above.

[¶9] Mr. Howe followed up with Dr. Hussieno on February 14, 2012, and again on May 14, 2012. Dr. Hussieno added dyspnea and hypoxemia under his assessment in February, continued him on Dulera, and "strongly encouraged weight loss, exercises and physical activities." Dr. Hussieno performed another spirometry test in May and reported the results as follows:

Showed severe obstructive lung defect with FEV1 43% of predicted. The obstruction is confirmed by reduction in FEF 25-75%. However, the patient did three attempts with significant variations. Overall the results are not reproducible.

. . . .

Conclusion: Severe obstructive defect with positive response to bronchodilator. However, the spirometry data was not reproducible which could be due to suboptimal efforts from the patient due to his dyspnea.

[¶10] Dr. Carlos Vassaux, M.D., examined Mr. Howe on July 11, 2012, for a second opinion. (It is unclear who requested the second opinion.) Dr. Vassaux found Mr. Howe's condition to be "multifactorial including obstructive lung disease possibly related to reactive airway dysfunction syndrome, restrictive lung disease related to patient's body habitus and deconditioning. He could also have chronic hypoxemia." He concluded that "Because the patient did not complain of previous symptoms prior to the exposure, he has no previous history of asthma or tobacco

---

1. Dr. Vassaux explained that Dulera is a "long-acting beta 2 agonist and inhaled corticosteroid."

use prior to the exposure it is possible that his obstructive symptoms could be related to chlorine gas exposure with subsequent development of reactive airway dysfunction syndrome."

[¶11] Dr. Hussieno examined Mr. Howe again on October 10, 2012. He noted:

[P]atient has evidence of an obstructive lung disease based on multiple spirometries. He claims that he never smoked. He may have a hyperactive airways [sic] due to chemical exposures. I believe the obesity is contributing to his symptoms. It is unclear if he has other conditions contributing to his dyspnea, especially that he does not drop his oxygen saturation below 90% with exertion. There might be a cardiac etiology. I recommend an echocardiogram. Check an overnight oximetry at room air. I suspect sleep apnea. Continue Dulera. Refill Spiriva and Proventil. Follow-up in 4 months.

On February 5, 2013, Dr. Hussieno responded to a questionnaire sent to him by the Division of Workers' Compensation (Division) regarding Mr. Howe's condition. Dr. Hussieno indicated that Mr. Howe reached Maximum Medical Improvement (MMI) on October 10, 2012, that he believed Mr. Howe may have a permanent partial impairment as a result of this worker's compensation injury, and that he would not perform a PPI rating.

[¶12] Mr. Howe met with Donna Smith, NP, from Dr. Hussieno's office on February 13, 2013. He reported being more short of breath than four months prior, daily phlegm production and some associated wheezing, and that he could not perform his job without becoming very winded and had to take frequent breaks. Ms. Smith reviewed a plan with Dr. Hussieno, and then recommended the following to Mr. Howe:

Consider checking into Wyoming Medical Center Charity program if an official polysomnograph would be considered to rule out obstructive sleep apnea. In addition, a 2Dechocardiogram needs to be done to rule out cardiac causes for his shortness of breath.

He is to continue his current COPD medications and [be] evaluated for disability if he feels he cannot perform his current job.

We will renew his Spiriva Dulera and [his] Ventolin inhaler.

Follow up in 6 months or before for problems or concerns.

[¶13] The Division sent Mr. Howe to Dr. Repsher, a consultant in environmental and occupational lung diseases, for a PPI assessment. Dr. Repsher performed an independent medical exam (IME) of Mr. Howe on May 8, 2013. In a two-page report, Dr. Repsher noted Mr. Howe's personal and medical history, the results of a limited physical exam, his review of some prior diagnostic testing, and he concluded that he could not find any objective evidence of pulmonary injury. He attributed all of Mr. Howe's symptoms to "obesity and lifestyle." Based on this report, the Division issued a final determination denying Mr. Howe's claim for PPI benefits. Although not reflected in the record, an objection to the final determination was likely made, and the Division sent Mr. Howe to Dr. Terry Brown, MD/MPH, for a second IME.

[¶14] Dr. Brown performed his examination of Mr. Howe on July 1, 2014, and diagnosed Mr. Howe with "RADS, morbid obesity with likely secondary restrictive pulmonary disease of uncertain extent, and probable obstructive sleep apnea." Dr. Brown informed the Division that he found Mr. Howe to have a 14% whole body impairment rating due to chlorine exposure in June 2011. Because of the conflicting ratings by Drs. Repsher and Brown, the Division forwarded "all of [Mr. Howe's] medical records including both rating reports [ ] to Dr. Brigham, author of the AMA Guides to the Evaluation of Permanent Impairment, Sixth Edition," for a third PPI recommendation. Dr. Brigham enlisted the help of Dr. Stephen Demeter, a board-certified physician in internal medicine, pulmonary medicine, and occupational medicine. Drs. Brigham and Demeter concluded that there was no ratable impairment and that Mr. Howe's complaints were unrelated to the chlorine exposure on June 24, 2011.

[¶15] The Division issued a final determination denying Mr. Howe's request for PPI benefits. Mr. Howe objected to the final de-

termination, and the case was referred to the Commission for a hearing, which was held in December 2015. Mr. Howe's medical records, the reports of Drs. Repsher, Brown, Brigham, and Demeter were admitted, along with the deposition testimony of Steve Mankowski, a former coworker of Mr. Howe. Mr. Howe and two other former coworkers, Robert Ortega and Joe Martel, testified in person. The Commission relied on the reports of Drs. Repsher, Brigham, and Demeter, and discounted the opinion of Dr. Brown, when it concluded that Mr. Howe failed to meet his burden of proof to show that he was entitled to an award of PPI benefits as a result of the work-related chlorine exposure. Mr. Howe timely petitioned the Ninth Judicial District Court for judicial review of the Commission's decision. The district court affirmed the decision of the Commission, and Mr. Howe timely appealed to this Court. Additional facts, testimony, and argument will be set forth below as necessary.

### STANDARD OF REVIEW

[¶16] This Court reviews a district court's decision on an administrative decision as though the case came directly from the administrative agency. *Price v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.,* 2017 WY 16, ¶ 7, 388 P.3d 786, 789 (Wyo. 2017). Our review is governed by the Wyoming Administrative Procedure Act (W.A.P.A.), which provides:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

. . . .

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2017). We apply a substantial evidence standard to review the agency's findings of fact by reviewing the entire record. *Rodgers v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2006 WY 65, ¶ 18, 135 P.3d 568, 575 (Wyo. 2006). If the agency's decision is supported by substantial evidence, we cannot substitute our judgment for that of the agency and must uphold the decision on appeal. *Id.* "Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence." *Id.* (citation omitted). Finally, "we review an agency's conclusions of law de novo, and will affirm only if the agency's conclusions are in accordance with the law." *Price,* 2017 WY 16, ¶ 7, 388 P.3d at 790 (quoting *Worker's Comp. Claim of Bailey v. State ex rel. Dep't of Workforce Servs.,* 2015 WY 20, ¶ 12, 342 P.3d 1210, 1213 (Wyo. 2015)).

### DISCUSSION

#### I. Was there sufficient evidence to support the Commission's finding that Mr. Howe did not suffer any permanent impairment as a result of the chlorine exposure?

[¶17] The dispute in this case focuses on the extent of Mr. Howe's injury and the proper impairment rating for that injury. When a worker's compensation claimant contests the Division's assigned PPI rating, he has the burden of proving by a preponderance of the evidence that he is entitled to a higher rating. *Green v. State ex rel. Dep't of*

*Workforce Servs., Workers' Safety & Comp. Div.*, 2013 WY 81, ¶ 28, 304 P.3d 941, 950 (Wyo. 2013). *See also Himes v. Petro Eng'g & Constr.*, 2003 WY 5, ¶ 16, 61 P.3d 393, 398-99 (Wyo. 2003). The Wyoming Worker's Compensation Act requires a licensed physician to rate an employee's physical impairment using the most recent edition of the American Medical Association's (AMA) guide to the evaluation of permanent impairment.[2] Wyo. Stat. Ann. § 27-14-405(g) (LexisNexis 2017). The Act provides that if the percentage of physical impairment is disputed, the Division must obtain a second opinion,[3] Wyo. Stat. Ann. § 27-14-405(m) (LexisNexis 2017). Any objection to the Division's final determination is then referred to the Commission for a hearing. *Id.*

[¶18] Mr. Howe argues that the Commission's conclusion, that he failed to meet his burden of proof to show that he was entitled to the higher PPI rating as a result of the June 24, 2011 work-related chlorine exposure, was not supported by substantial evidence and was arbitrary and capricious. He contends that the Commission equivocated on whether an accident occurred, misstated the facts surrounding the accident, failed to consider his health prior to the accident, and did not sustain its decision to accept Drs. Repsher, Brigham and Demeter's 0% PPI rating and reject Dr. Brown's 14% PPI rating with any supporting facts. He requests that this Court reverse the Commission's decision and remand "to the Medical Commission to award Howe 14% permanent partial impairment." The doctors' reports were conflicting. They did not testify at the hearing either by deposition or in person. Apply-

ing our standard of review, we will find that reasonable minds could find the evidence adequate to support the Commission's conclusion.

## A. Paragraph 2 of the Commission's Findings of Fact

[¶19] Mr. Howe first argues that paragraph 2 of the Commission's Findings of Fact is not supported by substantial evidence. That paragraph states:

2. While performing routine maintenance of the pool and hot tub, Howe was resupplying the chlorinator tubes with chlorine pellets on June 24, 2011. The pumps and chlorination equipment are housed in a small room within a small building next to the pool area. After inserting the pellets into the chlorinator tubes, Howe turned on the circulation pumps, when *one of the chlorinator tubes is said to have "exploded."* Howe was exposed to chlorine powder and gas. *Over time Howe has given somewhat varying accounts of this exposure,* but it appears that his exposure was limited to a minute or less.[1] (Hearing testimony of Dennis Howe)

Howe left the area of exposure and was assisted by a coworker in washing chlorine residue from his face and other exposed body parts. Howe refused medical attention and *remained at work for a few hours* before driving himself home. Robert Ortega, another maintenance man went to the room housing the pumps and chlorinators a short time after Howe's exposure. Ortega cleaned the area. He did not wear any protective gear. He could smell chlo-

2. The Commission concluded that Drs. Brigham and Demeter used the most recent AMA guides to evaluate Mr. Howe:

6. The *Guides to the Evaluation of Permanent Impairment*, (6th ed. 2008) is the most recent edition and was utilized by Drs. Brigham and Demeter in rating Howe's permanent impairment which resulted in the final determination denying PPI benefits....

Neither party disputes this fact.

3. In his brief, Mr. Howe states "Despite the lack of statutory authority under W.S. 27-14-405(m) for a third opinion, the Division then requested a review of Howe's records from Dr. Brigham who enlisted the assistance of Dr. Demeter." Mr. Howe does not provide further argument on this

issue and did not raise it in the proceedings below; therefore, we will not consider it at this time. *The Tavern, LLC v. Town of Alpine*, 2017 WY 56, ¶ 41, 395 P.3d 167, 178 (Wyo. 2017) ("We consistently have refused to consider arguments not supported by cogent argument and citation to legal authority.") (citing *In interest of DT*, 2017 WY 36, ¶ 29, 391 P.3d 1136, 1145 (Wyo. 2017)); *Positive Progressions, LLC v. Landerman*, 2015 WY 138, ¶ 21, 360 P.3d 1006, 1011 (Wyo. 2015) ("With the exception of certain jurisdictional or fundamental issues, we will not consider issues raised for the first time on appeal.") (citing *Meima v. Broemmel*, 2005 WY 87, ¶ 56, 117 P.3d 429, 447 (Wyo. 2005)).

rine. ***Ortega did not suffer any ill effects from cleaning the area in which the chlorinator exploded.*** (Hearing testimony of Robert Ortega)

[1] Howe's supervisor, Joe Martel, described the pool house and pump room as "well ventilated."

Mr. Howe takes issue with the statements emphasized in bold and italics.

■ [¶20] The statements with which Mr. Howe takes issue are peripheral to his impairment rating. The Commission is required to give careful consideration to all material evidence presented by the parties. *Rodgers*, 2006 WY 65, ¶ 23, 135 P.3d at 576 ("All of the material evidence offered by the parties must be carefully weighed by the agency as the trier of the facts." (citation omitted)). "Material evidence is such evidence as is offered to help prove a proposition which is a matter in issue." *State ex rel. Wyo. Workers' Safety & Comp. Div. v. Carson*, 2011 WY 61, ¶ 13, 252 P.3d 929, 932 (Wyo. 2011) (quoting *In re Harris*, 900 P.2d 1163, 1166 (Wyo. 1995)). Whether the chlorinator "exploded" and the varying accounts of exposure given by Mr. Howe do not alter the fact that Mr. Howe was exposed to chlorine gas, a fact not disputed by either party in this case. Additionally, the length of time Mr. Howe remained at work and whether Mr. Ortega suffered any ill effects from cleaning the area of exposure are not material. Because none of the details of the Commission's Findings of Fact that Mr. Howe complains of are material to his impairment rating, we will not address them, and we will move on to Mr. Howe's argument regarding his pre-injury and post-injury conditions.

## B. Mr. Howe's physical condition

■ [¶21] Mr. Howe argues that the Commission did not adequately address his condition before and after the accident and the findings it did make related to his condition prior to the chlorine exposure were not supported by substantial evidence. We disagree. In three separate paragraphs, the Commission made findings related to Mr. Howe's pre-injury condition based on the relevant evidence before it:

4. The emergency room records note that Howe had no similar breathing difficulties until the chlorine explosion on June 24, 2011....

. . . .

7. ... Howe claimed he had no breathing difficulties before June 2011 and that his obesity was never a problem. (Hearing testimony of Dennis Howe) Several coworkers also testified that Howe was generally able to perform his work before the June 2011 chlorine exposure, but that he often appeared more winded upon physical exertion after that incident.

. . . .

14. ... Howe denied to Dr. Vassaux symptoms of shortness of breath before the incident on June 24, 2011.

The Commission concluded:

16. ... Dr. Hussieno relied on Howe's assertion that he had no breathing difficulties prior to June 24, 2011. This assertion is undercut by other evidence in the case, that Howe in fact was morbidly obese and had some breathing difficulties upon physical exertion even before June 24, 2011.

[¶22] This conclusion is supported by substantial evidence in the record. Ms. Hitshew's records categorize Mr. Howe as "overweight;" Dr. Hussieno opined "I believe the obesity is contributing to his symptoms;" Dr. Vassaux found Mr. Howe to be "morbidly obese" and concluded that any mild restrictive lung physiology and shortness of breath were "most likely related to [his] underlying body habitus;" Dr. Repsher indicated that his "[p]hysical exam reveals that [Mr. Howe] is markedly obese" and attributed all of his symptoms to "obesity and lifestyle;" Dr. Brown noted Mr. Howe to be "obese" and he agreed "with the physicians who felt that some restrictive disease was present and probably due to his large body build;" and Drs. Demeter and Brigham found Mr. Howe to be "morbidly obese" and in reviewing the pulmonary function tests previously performed, the doctors noted that "[t]here was some restriction (a decrease in the FVC), but it is our opinion that this is a reflection of Mr. Howe's morbid obesity." Additionally, Mr. Howe's former coworker testified that before the chlorine exposure, he observed

Mr. Howe becoming short of breath while working. The Commission's findings regarding Mr. Howe's condition before and after the June 2011 chlorine exposure were reasonable and adequately supported by the facts in the record. *See Chavez v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2009 WY 46, ¶ 18, 204 P.3d 967, 971 (Wyo. 2009).

■ [¶23] Mr. Howe further argues that: Even if [he] had underlying conditions as a result of his obesity, there is no evidence that he had any physical problems as a result of that condition prior to the chlorine gas exposure. The Supreme Court of Wyoming has long recognized an aggravation of a preexisting condition as compensable based upon the conditions of the employee prior to the accident and his condition after.

(Citations omitted). Although Mr. Howe is correct that an aggravation of a preexisting condition is compensable, here we are not concerned with compensability, but rather with the degree of his permanent impairment, if any. We held in *State ex rel. Wyo. Workers' Safety & Comp. Div. v. Faulkner*, 2007 WY 31, ¶ 24, 152 P.3d 394, 401 (Wyo. 2007), that when a work-related injury causes an increase to pre-existing impairment, the worker is entitled to an impairment rating for the full impairment, without apportionment. But in *Faulkner*, the experts agreed that the injured worker had some degree of impairment as a result of the work-related injury (1% or 3%), even though most of it was preexisting (23% or 20%). *Id.* at ¶¶ 6-8, 152 P.3d at 395-96. In contrast, in Mr. Howe's case, the experts the Commission found credible found *no* impairment as a result of his work-related injury. We turn next to the Commission's decision to uphold the Division's 0% impairment rating based on Drs. Repsher, Brigham and Demeter's reports.

**C. The Commission's decision to reject Dr. Brown's 14% PPI rating and accept Drs. Repsher, Brigham, and Demeter's 0% rating**

■ [¶24] Mr. Howe contends that the Commission's decision to reject Dr. Brown's impairment rating was not supported by substantial evidence because Dr. Brown's rating was based on a "thoughtful and through [sic] review of the underlying history and medical records to support his conclusion that Howe suffered from a permanent impairment due to the chlorine exposure...." In contrast, he points out that Dr. Repsher's report does not set out what medical records he reviewed or what facts he relied upon in reaching his opinions. He also takes issue with the Commission's reliance on Drs. Brigham and Demeter's reports, arguing that their report is "fraught with inconsistencies (the report recognizes wheezing as being present at the ER [ ], then denies its existence when discussing wheezing as a factor in the diagnosis of RADS [ ]), and displays an obvious bias to find against Howe."

[¶25] The Division contends that the Commission's decision should be upheld because it is supported by substantial evidence with the opinions of Drs. Repsher, Brigham, and Demeter. It claims that the reports of Drs. Repsher, Brigham, and Demeter are adequately supported by facts, and concludes that it is the Commission's duty to judge expert credibility and based on the record before it, the Commission was correct in determining Drs. Repsher, Brigham, and Demeter were more credible.

■ [¶26] When the Commission determines that the claimant failed to meet the requisite burden of proof, it is our job to determine "whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole." *Price*, 2017 WY 16, ¶ 7, 388 P.3d at 789-90 (citing *Bailey*, 2015 WY 20, ¶ 11, 342 P.3d at 1213). An agency's decision which disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record will be sustainable under the substantial evidence test. *Id.* "Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it." *Id.*

(citing *Bailey*, 2015 WY 20, ¶ 11, 342 P.3d at 1213).

[¶27] The Commission stated:

13. After examination and pulmonary function testing, Dr. Hussieno concluded that Howe was suffering from RADS as a result of the chlorine exposure at work. Dr. Hussieno followed Howe over time and appears to have attributed his pulmonary dysfunction more to obesity and sleep apnea, and less to the chlorine exposure, although he could not rule out RADS due to the exposure.

Dr. Vassaux, who saw Howe in July 2012, thought Howe's condition could be multifactoral [sic], including RADS resulting from the chlorine exposure, but also restrictive lung disease due to obesity. . . .

Dr. Brown, who saw Howe for a second opinion on permanent impairment, felt that Howe had RADS as a result of the chlorine exposure, as well as restrictive lung disease and probable sleep apnea due to obesity. . . .

On the other hand, Dr. Repsher and later Drs. Brigham and Demeter found unreliable the pulmonary function testing relied upon by Dr. Hussieno, Dr. Vassaux and Dr. Brown to diagnose RADS. These three doctors found no evidence of RADS. They did find evidence of restrictive lung disease due to obesity and possible sleep apnea. . . .

. . . .

23. Dr. Hussieno failed to address the deficiencies in the pulmonary function testing and spirometries upon which his diagnosis of RADS depended. Dr. Brown glossed over those deficiencies to conclude that Howe is suffering from RADS. *Watkins v. State ex rel. Wyo.* [ *Medical Comm'n* ], 2011 WY 49, ¶ 25, 250 P.3d 1082 (Wyo. 2011). The testing deficiencies were noted by Drs. Vassaux, Repsher, Brigham and Demeter.

24. . . . Dr. Brown is board certified in occupational and environmental medicine and a certified independent medical examiner from Salt Lake City, Utah. The Medical Hearing Panel was not provided information on his credentials. Dr. Brown was given a version of the chlorine exposure different from that provided by Howe to other medical providers. *Huntington v. State ex rel. Wyo. Workers' Comp. Div.*, 2007 WY 124, ¶ 13, 163 P.3d 839 (Wyo. 2007).

Dr. Repsher is a pulmonologist and the Medical Director of the Occupational and Environmental Lung Disease Program at Lutheran Medical Center in Wheatridge, Colorado. Dr. Repsher is also a board certified medical examiner. Dr. Brigham is board certified in occupational medicine. He is a Senior Contributing Editor for the AMA Guides to the Evaluation of Permanent Impairment, Sixth Edition. He is a certified independent medical examiner. Dr. Demeter, who assisted Dr. Brigham in reviewing Howe's medical records and authoring an opinion on permanent impairment is board certified in three areas, including pulmonary medicine and occupational medicine. Dr. Demeter was a Professor and Head of the Division of Pulmonary and Critical Care Medicine at Northeastern Ohio Universities College of Medicine.

[¶28] After assessing all of the evidence before it, the Commission concluded that Mr. Howe did not meet his burden, reasoning in pertinent part:

25. Upon the record presented, the Medical Hearing Panel finds Drs. Repsher, Brigham and Demeter better qualified to offer opinions on the validity of the pulmonary function testing and spirometry performed by or relied on by Dr. Hussieno. We also find them better qualified to offer opinions on whether Howe suffered an acute or chronic case of RADS on June 24, 2011. We find their reports and the opinions contained therein, more reliable, better reasoned and entitled to greater weight in this case. *Pohl v. The Bailey Company*, 980 P.2d 816, 821 ( [Wyo.] 1999) [*overruled on other grounds by Torres v. State ex rel., Wyo. Workers' Safety & Comp. Div.*, 2004 WY 92, 95 P.3d 794 (Wyo. 2004) ].

[¶29] Our review of the record confirms that the Commission's decision is supported by substantial evidence, that is, a reasonable mind might accept it as adequate to support

the conclusion. The record supports the conclusion that Mr. Howe had some impairment at the time of testing and the reviewing doctors recognized that impairment, but whatever impairment he had was not related to the chlorine exposure. The Commission agreed. In addition, it is evident that the Commission considered the opinions of Drs. Hussieno, Brown, and Vassaux, but was ultimately persuaded by the opinions of Drs. Repsher, Brigham, and Demeter, who all concluded that Mr. Howe was entitled to a 0% impairment rating. Mr. Howe is asking this Court to reweigh the evidence to find in favor of Dr. Brown's opinion, a task we will not undertake. The Commission's decision to accept Drs. Repsher, Brigham, and Demeter ratings is supported by substantial evidence and not against the overwhelming weight of the evidence.

## II. Was the Commission's decision arbitrary and capricious?

[¶30] Mr. Howe also challenges the Commission's findings as arbitrary and capricious. The arbitrary and capricious standard is available "as a 'safety net' to catch agency action which prejudices a party's substantial rights or which may be contrary to the other W.A.P.A. review standards yet is not easily categorized or fit to any one particular standard." *Matter of Claim of Hood,* 2016 WY 104, ¶ 15, 382 P.3d 772, 776 (Wyo. 2016) (quoting *Newman v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2002 WY 91, ¶ 23, 49 P.3d 163, 172 (Wyo. 2002)). "The arbitrary and capricious standard applies if the agency failed to admit testimony or other evidence that was clearly admissible, or failed to provide appropriate findings of fact or conclusions of law." *Jacobs v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2013 WY 62, ¶ 9, 301 P.3d 137, 141 (Wyo. 2013).

[¶31] Mr. Howe's brief melds together the argument of "unsupported by substantial evidence" and "arbitrary and capricious." He provides no independent argument supporting the arbitrary and capricious claim that we did not already address above in the substantial evidence discussion. *See supra* ¶¶ 17-29. Furthermore, we found that the Commission provided appropriate findings of facts and conclusions of law based on the record before it. *See supra* ¶ 29.

## CONCLUSION

[¶32] The Commission's determination that Mr. Howe did not prove he was entitled to an increased impairment rating was supported by substantial evidence and the Commission could have reasonably concluded as it did. The Commission's decision was not arbitrary and capricious. Affirmed