# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 20

### OCTOBER TERM, A.D. 2014

### February 10, 2015

IN THE MATTER OF THE WORKER'S
COMPENSATION CLAIM OF:

VERNON BAILEY,

Appellant
(Petitioner),

v.                                                        S-14-0109

STATE OF WYOMING, ex rel.,
DEPARTMENT OF WORKFORCE
SERVICES, WORKERS' SAFETY AND
COMPENSATION DIVISION,

Appellee
(Respondent).

*Appeal from the District Court of Fremont County*
*The Honorable Marvin L. Tyler, Judge*

*Representing Appellant:*
Frank B. Watkins of Frank B. Watkins, P.C., Riverton, WY.

*Representing Appellee:*
Peter K. Michael, Wyoming Attorney General; John D. Rossetti, Deputy Attorney General; Michael J. Finn, Senior Assistant Attorney General; and Quinn J. Lance, Student Intern.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]    Vernon Bailey challenges a Medical Commission order denying him further benefits for a cervical spine injury.  Mr. Bailey argues on appeal that the Medical Commission's findings and conclusions were not supported by substantial evidence.  We will affirm.

## ISSUE

[¶2]    Mr. Bailey phrases the single issue as follows:

> Did the Medical Commission err in finding that [Bailey] had not met his burden of proof that he was entitled to further cervical Workers' Compensation benefits as a result of his work related injury on February 7, 2011?

## FACTS

[¶3]    On February 7, 2011 Vernon Bailey slipped and fell during his shift as a custodial supervisor at the Holiday Inn in Riverton.  He injured his knees, right wrist, head, neck, and back. [1]   Immediately after his injuries, he was transported to Riverton Hospital where he underwent a number of procedures, including a CT scan on his cervical spine.  Three days later Mr. Bailey sought the care of Dr. Robert Narotzky, a neurosurgeon, who recommended steroid injections but not surgery.

[¶4]    On March 4, 2011 the Wyoming Workers' Compensation Division (Division) awarded benefits to Mr. Bailey.  Dr. Narotzky referred Mr. Bailey to Dr. Todd Hammond, an anesthesiologist, who administered a steroid injection.  Dr. Hammond gave Mr. Bailey a pain log and recommended that he follow up with Dr. Thomas Kopitnik, another neurosurgeon, if his symptoms did not improve.  Dr. Narotzky recommended, and Mr. Bailey underwent, an MRI of his cervical spine, which showed minimal to mild foraminal narrowing in C3-4, C4-5, and C5-6.

[¶5]    Six weeks after his MRI Mr. Bailey received a CT C-spine post-myelogram.  The CT scan  showed "[m]ultilevel degenerative changes of the cervical spine." After reviewing Mr. Bailey's scans Dr. Kopitnik recommended that Mr. Bailey "undergo a C5-6 and C6-7 anterior cervical discectomy and fusion because of neck pain."  Dr. Kopitnik submitted a request to the Division for preauthorization for the recommended discectomy

---

[1]    The record indicates that Mr. Bailey's wife prepared the initial injury report.  The report was completely typed except for a notation that added the word "neck" to the list of injuries.  The Medical Commission noted that the word "neck" seemed to have been added to the report after the fact.

and fusion. However, the Division denied the request, to which Mr. Bailey objected. Mr. Bailey requested a hearing, which was referred to the Medical Commission.

[¶6]    Before the Medical Commission hearing Dr. Kopitnik submitted to a deposition. He testified that Mr. Bailey previously reported back pain to Dr. Narotzky in 2009, a full year and a half before his work fall. Dr. Kopitnik testified that, in his opinion, Mr. Bailey's work fall did not cause his cervical spine injury. This was contrary to his earlier statement that he expressed when he submitted the preauthorization request for Mr. Bailey's surgery in 2011. Dr. Kopitnik stated, "[Mr. Bailey] had a myelogram of his neck February 16, 2010. And this new myelogram, April 18, 2011, to me, does not look that different."

[¶7]    In March of 2012 Mr. Bailey was referred to yet another doctor, Dr. Eric Schubert, a neurologist, who reviewed the MRI and CT scan of Mr. Bailey's cervical spine. Dr. Schubert reported that the MRI showed "moderate degenerative disk disease at C4-5, C5-6, and C6-7." Dr. Schubert recommended surgery to alleviate Mr. Bailey's pain. Dr. Schubert was also deposed in preparation for the Medical Commission hearing and again testified that he recommended a three-level discectomy and fusion for Mr. Bailey. However, when asked if the 2011 workplace fall caused the need for recommended surgery, Dr. Schubert responded "that would be conjecture on my part." Dr. Schubert also admitted that Mr. Bailey's medical records reflected a recommendation of neck surgery *prior* to his fall in 2011.

[¶8]    Along with the testimony of Drs. Kopitnik and Schubert, Dr. John F. Ritterbusch, an orthopedic surgeon, conducted an independent medical examination. After examining Mr. Bailey and his medical records Dr. Ritterbusch found no evidence of acute injury after the accident of February 7, 2011 on the CT scans, x-rays, and myelogram. Dr. Ritterbusch said it was his opinion that the documentation failed to establish an acute injury or an aggravation or exacerbation to the cervical spine after the accident. The doctor also stated that "[i]t is a mystery to me after reviewing this chart why this surgical procedure was ever considered."

[¶9]    After the hearing the Medical Commission upheld the Division's denial of benefits for Bailey's cervical spine issues. In its findings of fact the Medical Commission relied upon Dr. Kopitnik's testimony and discounted Dr. Schubert's testimony. In response, Mr. Bailey filed a *Petition for Review of Administrative Action* in district court. The district court affirmed the Medical Commission and this appeal followed.

## STANDARD OF REVIEW

[¶10] When considering an appeal from a district court's review of an administrative agency's decision, we treat the case as if it had come directly from the administrative agency, without giving any deference to the district court's decision. *Kenyon v. State ex*

2

*rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 14, ¶ 10, 247 P.3d 845, 848 (Wyo. 2011); *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo. 2008). Our review is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2013):

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> > (i) Compel agency action unlawfully withheld or unreasonably delayed; and
> >
> > (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
> >
> > > (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
> > >
> > > (B) Contrary to constitutional right, power, privilege or immunity;
> > >
> > > (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
> > >
> > > (D) Without observance of procedure required by law; or
> > >
> > > (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Under § 16-3-114(c) we review the agency's findings of fact by applying the substantial evidence standard. *Dale*, ¶ 21, 188 P.3d at 561. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bush v. State ex rel. Workers' Comp. Div.*, 2005 WY 120, ¶ 5, 120 P.3d 176, 179 (Wyo. 2005) (citation omitted). "'Findings of fact are supported by substantial evidence if, from the evidence preserved in the record, we can discern a rational premise for those findings.'" *Kenyon*, ¶ 11, 247 P.3d at 849, quoting *Bush*, ¶ 5, 120 P.3d at 179.

[¶11] Regarding an agency determination that the employee/claimant did not satisfy his burden of proof, we have stated:

> If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision

to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it.

*Dale*, ¶ 22, 188 P.3d at 561 (citations omitted).

[¶12]  Finally, "we review an agency's conclusions of law *de novo*, and will affirm only if the agency's conclusions are in accordance with the law." *Kenyon*, ¶ 13, 247 P.3d at 849, quoting *Moss v. State*, 2010 WY 66, ¶ 11, 232 P.3d 1, 4 (Wyo. 2010). *See also*, *Dale*, ¶ 26, 188 P.3d at 561-62.

## DISCUSSION

[¶13] Mr. Bailey argues on appeal that the Medical Commission's findings and conclusions were not supported by substantial evidence. Mr. Bailey contends that the Medical Commission erred when it gave greater weight to one expert over another. Based upon our review of the record, we conclude that the Medical Commission's decision was supported by substantial evidence.

[¶14] Wyo. Stat. Ann. § 27-14-102(a)(xi) (F) and (G) (LexisNexis 2013) defines the term "injury" in relevant part as:

> [A]ny harmful change in the human organism other than normal aging . . . arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business. "Injury" does not include:
>
> . . . .
>
> (F) Any injury or condition preexisting at the time of employment with the employer against whom a claim is made;

4

(G) Any injury resulting primarily from the natural aging process or from the normal activities of day-to-day living, as established by medical evidence supported by objective findings[.]

[¶15]  In applying this provision, we have said that an employer takes an employee as he finds him, and an employee who has a preexisting condition may still recover if his employment substantially or materially aggravated the condition. *Lindbloom v. Teton Int'l*, 684 P.2d 1388, 1389 (Wyo. 1984). Furthermore, a "preexisting disease or infirmity of the employee does not disqualify a claim under the 'arising out of employment' requirement if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought." *Dutcher v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 10, ¶ 14, 223 P.3d 559, 562 (Wyo. 2010) (quoting *Lindbloom*, 684 P.2d at 1389; *State ex rel. Wyo. Workers' Safety & Comp. Div. v. Faulkner*, 2007 WY 31, ¶ 11, 152 P.3d 394, 397 (Wyo. 2007)); *State ex rel. Wyo. Workers' Comp. Div. v. Fisher (In re Fisher)*, 914 P.2d 1224, 1227 (Wyo. 1996).

[¶16] For a claimant to recover under the theory of material aggravation he must establish by a preponderance of the evidence his work "contributed to a material degree to the aggravation of the preexisting condition." *Boyce v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 9, ¶ 11, 105 P.3d 451, 455 (Wyo. 2005). We further explained the proof required to show a work-related aggravation of a preexisting condition:

> [O]ur case law requiring a claimant to show his or her employment "materially or substantially aggravated" the preexisting injury does not require expert medical testimony specifically using the words "substantial or material." Rather, what our cases require is that the claimant show that work activities, rather than the natural progression of the condition, factors associated with ordinary daily living or some other non-work related factor, significantly aggravated the preexisting condition. The nexus between work activities and the aggravation ordinarily will be shown through expert opinion testimony. That is, expert medical testimony ordinarily will be required to establish the link between the worsening of the medical condition and the claimant's work activities, rather than some other factor. The materiality of the nexus ordinarily will be shown through evidence of the facts and circumstances surrounding the employment. Stated simply, the claimant is required to prove by a preponderance

5

of all of the evidence that the work activities were a significant factor in the worsening of the preexisting condition.

*Boyce,* ¶ 16, 105 P.3d at 456. This Court has explained that "there are no 'magic' words which must be uttered by the medical expert in order to justify a finding that the claimant suffered a material aggravation of a pre-existing condition." *State ex rel. Wyo. Workers' Safety v. Slaymaker*, 2007 WY, ¶ 18, 156 P.3d 977 at 984 (Wyo. 2007). However, the Medical Commission can disregard a medical expert's testimony if they find it "unreasonable, not adequately supported by the facts upon which the opinion is based, or based upon an incomplete and inaccurate medical history provided by the claimant.'" *Watkins v. State ex rel. Wyo. Med. Comm'n*, 2011 WY 49, ¶ 25, 250 P.3d 1082, 1091 (Wyo. 2011) (quoting *Taylor v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 148, ¶ 15, 123 P.3d 143, 148 (Wyo. 2005)).

[¶17] In this case, the Medical Commission considered the opinion of three experts – Dr. Kopitnik, Dr. Schubert, and an independent medical examination conducted by Dr. Ritterbusch. While the parties disagreed as to whether Mr. Bailey's neck injury was preexisting, the Commission concluded that "Mr. Bailey suffered from preexisting cervical pathology prior to the work injury of February 7, 2011." However, the Commission used the experts' testimony to ultimately conclude that the work-related injury on February 7, 2011 did not materially aggravate the preexisting condition. The Commission stated:

> In this matter, we have that benefit of studies done before and after the 2011 fall, and those studies indicate that there were no differences in pathology in the cervical spine, indicating quite clearly that Mr. Bailey did not suffer an acute injury to his cervical spine at the time of the fall in February, 2011. We find that the pathology in his spine is due to general aging and overall wear and tear and his ongoing degenerative condition, and we find that his preexisting cervical spine pathology was NOT aggravated by the fall, and he clearly returned to baseline. We also note that Mr. Bailey did NOT claim that his cervical pathology was a condition that had occurred over a substantial period of time, as contemplated by Wyoming Statute 27-14-603(a) but claimed the cervical injury was due to the single specific incident on February 7, 2011, when he fell on the ice.

[¶18] During the hearing, Dr. Kopitnik testified as follows:

6

A. … So, to answer your question, he had a myelogram of his neck February 16th of 2010. And this new myelogram, April 18th, 2011, to me, does not look that different. But it's not the highest quality because of his size. It's hard to get imaging on him, because he is 5-10 and 274 pounds, and he's a very large upper trunk. So it's very hard to get images on him. But I don't see that it looks appreciably different April 18th to February 16th of 2010.

. . . .

Q. It does not appear that whatever happened to him in February when he slipped at work has caused his cervical condition?

A. I would agree with that. I don't think there's any evidence of that. I agree with that.

. . . .

[Mr. Bailey] does have, based on his x-ray reports both on February of '10 and April of '11, large disk bone spurs at C5-6 and C6-7. And I'll – I can read - although I interpret these myself, I can read the April CT myelogram. It states that he had a central disk osteophyte complex effacing the ventral thecal sac, contacting the ventral aspect of the spinal cord which is being flattened. The same thing at C6-7. Effaces the ventral thecal sac.

So although there's no stenosis, he has bony spurs pushed into his spinal cord at C5-6 and C6-7. And it would be in his best interest because of pain in his neck to have those bone spurs removed.

Q. What causes the bony spurs, Doctor?

A. I don't have any idea, and I don't think anyone can say definitively. It is theorized in some patients they are the residual of disk ruptures that have not resolved and they have gone on to calcification.

Q. Something that happens over a relatively long period of time, then?

A. Yes, sir. Recently long, relatively. Months to years, yes sir.

[¶19] About Dr. Kopitnik's testimony, the Medical Commission said, "[t]he most persuasive opinion in this matter is that put forth by Dr. Kopitnik, who actually requested preapproval from the Division of the cervical procedure, but indicated upon questioning that Mr. Bailey's pre and post February 7, 2011 condition was not 'appreciably different.'" The credibility of Dr. Kopitnik's testimony was bolstered by Dr. Ritterbusch,

7

who said it was his opinion that the documentation failed to establish an acute injury or an aggravation or exacerbation to the cervical spine after the accident.

[¶20] Mr. Bailey argues that the testimony by Dr. Kopitnik and Dr. Ritterbusch, along with the rest of the record, does not amount to substantial evidence enough to support the Medical Commission's decision. Instead, Mr. Bailey relies entirely upon the testimony of Dr. Schubert and encourages this Court to do so as well. Mr. Bailey contends that through Dr. Schubert's testimony he satisfied the burden of proof required to show that he materially aggravated his condition. Mr. Bailey's argument is not consistent with our standard of review. As we stated earlier, in reviewing an agency's determination that the burdened party failed to meet his burden of proof, we decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party. In cases like this one, we consider whether the agency's rejection of the claimant's evidence was contrary to the overwhelming weight of the evidence in the record as a whole. Mr. Bailey only relies upon the portions of Dr. Schubert's testimony that support his claim. In actuality, when asked the cause of Mr. Bailey's need for surgery, Dr. Schubert stated, "[i]t would be conjecture on my part." Importantly, Dr. Schubert also responded that it "would be conjecture" on his part when specifically asked if the February 7, 2011 workplace fall caused his need for surgery. Dr. Schubert testified as follows:

> I think it's possible that Mr. Bailey had aggravation of a preexisting condition which became symptomatic once he had his fall.
> . . . .
> I think the fall is what is likely causing his current symptoms that surgery is a consideration for elective surgery to treat his symptoms which haven't responded well to other therapies."

However, when Dr. Schubert was pressed about stating his opinion to a reasonable degree of medical probability, he stated for a third time: "… that would be conjecture on my part." Dr. Schubert also testified that he based his opinion on Mr. Bailey's assertions that he did not have any cervical spine symptoms before his workplace fall in 2011. However, the record clearly indicates that Mr. Bailey's cervical spine problems began prior to the accident.

[¶21] The Medical Commission summarized Dr. Schubert's testimony as follows:

> Dr. Schubert indicated that the fall may have aggravated the preexisting condition in his cervical spine, but we find that Dr. Schubert was equivocal in his opinion, and confirmed that his opinion was based largely on the subjective reporting of

8

Mr. Bailey, and any opinion on that issue by Dr. Schubert
would be speculative.

The Medical Commission based its credibility determinations on the record and explained its reason as to why it accepted Dr. Kopitnik's testimony and rejected Dr. Schubert's testimony. If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Along with Dr. Kopitnik's testimony, the medical records and independent medical examination supported the Medical Commission's decision to deny Mr. Bailey benefits for his cervical spine injury.

[¶22] Under these circumstances, we cannot say that the Medical Commission was wrong to discount the medical opinions proffered by Dr. Schubert. The Medical Commission's rejection of Mr. Bailey's evidence and its determination that Mr. Bailey failed to meet his burden of proving his preexisting cervical spine injury was materially aggravated by his fall at work on February 7, 2011 was not contrary to the great weight of the evidence. Consequently, substantial evidence existed to support the Medical Commission's decision.

## CONCLUSION

[¶23] We affirm the district court's order affirming the Medical Commission's order denying Vernon Bailey further benefits for his cervical spine injury.