# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 131

OCTOBER TERM, A.D. 2021

*November 24, 2021*

STEVEN P. FLAUDING, JR.,

**Appellant**
**(Petitioner),**

**v.**

**STATE OF WYOMING ex rel.**
**WYOMING DEPARTMENT OF**
**TRANSPORTATION,**

**Appellee**
**(Respondent).**

S-21-0106

*Appeal from the District Court of Carbon County*
*The Honorable Dawnessa A. Snyder, Judge*

*Representing Appellant:*
R. Michael Vang of R. Michael Vang P.C., Laramie, Wyoming

*Representing Appellee:*
Bridget Hill, Wyoming Attorney General; Misha Westby, Deputy Attorney General; Michael T. Kahler, Senior Assistant Attorney General

*Before FOX, C.J., and DAVIS, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**DAVIS**, **Justice.**

[¶1]    Steven Flauding Jr. was arrested for driving while under the influence of alcohol. Law enforcement administered a breathalyzer test that indicated Mr. Flauding had a blood alcohol concentration greater than .08%.  The Wyoming Department of Transportation (WYDOT) suspended his driver's license and operating privileges pursuant to Wyo. Stat. Ann. § 31-6-102(e).  Mr. Flauding challenges the Office of Administrative Hearing's (OAH) decision upholding the suspension.  He contends that the OAH could not consider the results of the breathalyzer test because law enforcement interfered with his statutory and substantive due process right to obtain an independent chemical test.  We affirm.

## ISSUES

[¶2]    Mr. Flauding raises one issue for our review, which we restate as follows:

> Does substantial evidence support the OAH's finding that law enforcement did not interfere with Mr. Flauding's right to obtain an independent chemical test under Wyo. Stat. Ann. § 31-6-102(a)(ii)(C) and § 31-6-105(d)?

## FACTS

[¶3]    On July 30, 2020, Sergeant Joel Robertson of the Rawlins Police Department was out on routine patrol at approximately 11:15 p.m. when he noticed dust being kicked up off of South Higley Boulevard.  He looked toward the area and observed a vehicle's taillights and a headlight in the sagebrush off the main roadway.  He drove as close as he could to the vehicle, exited his patrol car, and walked toward it.

[¶4]    He observed a man in a white shirt duck behind the vehicle, a yellow jeep.  He yelled to him, "what are you doing, can I see your hands," but got no response.  He repeated his request, and the man walked around the vehicle with his hands in the air.  He said his name was Steve Flauding, and that he was disposing of tree branches.  When he was asked if he had identification, Mr. Flauding patted his pockets and said, "I don't."  Mr. Flauding did not have his wallet, but he did have proof of insurance inside the vehicle.

[¶5]    Sergeant Robertson observed that Mr. Flauding's eyes were heavy, and that he smelled strongly of alcohol.  He was also unsteady, and his speech was slurred.  When he was asked if he had been drinking, he admitted, "I've had a couple."  He changed his story multiple times when he was asked how much he had to drink, when he began drinking, and where he was drinking, but he ultimately admitted to consuming six twelve-ounce beers.

[¶6]    Sergeant Robertson arrested Mr. Flauding for driving while under the influence of alcohol in violation of Wyo. Stat. Ann. § 31-5-233(b)(i).  He searched Mr. Flauding's

1

pockets, which contained a set of keys and a flashlight, but no wallet. He placed Mr. Flauding in the back seat of the patrol vehicle and informed him of his rights and obligations under the implied consent law. He told Mr. Flauding that if a chemical test indicated that he was under the influence of alcohol, he might be subject to criminal penalties and/or a suspension of his driving privileges. He also further informed him that after undergoing all law enforcement-required chemical tests, he could "be taken to the nearest hospital or clinic to secure any additional test at [his] own expense."

[¶7]    Sergeant Robertson told Mr. Flauding that he was required "to take a breath test at [the] agency's expense," and then asked if he would agree to take the test. Mr. Flauding asked why he was not given a breath test, and the officer explained that that was what he was attempting to do. Mr. Flauding asked hypotheticals as to what would happen if he "blew" certain concentrations, but he ultimately agreed to take the breathalyzer test.

[¶8]    Before he drove Mr. Flauding to the detention center in Rawlins, Sergeant Robertson asked Mr. Flauding for his wife's phone number. He responded that he could not remember, and that he left his phone at home because he had not planned to be gone long. He said that his wife should be at their residence, so the officer asked his dispatcher to contact her to ask her to retrieve the jeep. Another officer was sent to the Flauding residence and knocked on the doors, but no one answered. Other attempts to locate Mrs. Flauding were also unsuccessful.

[¶9]    A breathalyzer test was completed at the detention center. It showed that Mr. Flauding's blood alcohol concentration was greater than .08%. He was informed of the results, and he responded, "that's perfect" and "that's a lot for six beers." He questioned the accuracy of the test, asserting "there's no way I blew that," and that the machine was "a liar." He then suggested that the testing should be reported as a .06, and he also insisted that he was never on a public road anyway.

[¶10]   Sergeant Robertson read the following advisement to Mr. Flauding for a second time:

> According to Wyoming State Statute 31-6-105, you may, at your own expense, have a qualified person of your own choosing administer a chemical test or tests in addition to this test. Your failure or inability to obtain an additional test or tests shall not preclude the admissibility in evidence of this test.

He reiterated that if Mr. Flauding did not agree with the breathalyzer test (which he did not) that he could take him to the hospital where the hospital personnel would draw his blood for testing, but that he would have to pay for it. He told him that the test cost $150.00.

2

[¶11]   Mr. Flauding requested an independent test.  He indicated that he had $150.00 in his wallet, and Sergeant Robertson asked him where his wallet was.  Instead of answering the question, Mr. Flauding asserted that the county was required to pay for the test. Sergeant Robertson told Mr. Flauding that he was required to pay for any additional test, but that since he had no means to pay, he would call the hospital to see if it would perform the test and bill him.

[¶12]   Sergeant Robertson then contacted the hospital, and a hospital representative told him that a lab draw to determine blood alcohol concentration ("BAC") was not a service the hospital would bill for.  The representative told the officer that it would require advance payment before performing the test.  Mr. Flauding admitted that he had no means to pay for the test, but he again asserted that the county had to pay for it, and he promised he would pay the county back later.  Since he could not pay for the test, Sergeant Robertson did not drive Mr. Flauding to the hospital, and instead booked him into the detention center.

[¶13]   The Wyoming Department of Transportation (WYDOT) notified Mr. Flauding that his driver's license would be suspended for ninety days, and that he was disqualified from holding a commercial driver license for one year.  On August 13, 2020, he requested a contested case hearing on the suspension.

[¶14]   After several agreed-to continuances, a contested case hearing was held before an OAH hearing examiner on October 20, 2020.  The examiner heard testimony from Sergeant Robertson, and also received and reviewed body camera footage from the arrest.

[¶15]   Mr. Flauding's counsel argued at the hearing that: (1) the evidence was insufficient to show that Mr. Flauding was operating and/or exercising physical control over a motor vehicle on a public street or highway in violation of Wyo. Stat. Ann. § 31-5-233; and (2) that Mr. Flauding was not afforded the opportunity to obtain an independent blood test pursuant to Wyo. Stat. Ann. § 31-6-102(a)(ii)(C).  Counsel contended that the arresting officer unreasonably interfered with his client's attempt to obtain an independent test, and that therefore the results of the breathalyzer test could not be considered.

[¶16]   The hearing examiner found that the officer did not interfere with Mr. Flauding's attempt to obtain an independent test, but that the test was instead unavailable to him because he did not have the means to pay for it.  The examiner also found that the breathalyzer results could be considered because failure or inability to obtain an independent chemical test did not make the breath test inadmissible under Wyo. Stat. Ann. § 31-6-105(d).  The OAH therefore upheld WYDOT's license suspension and commercial driver's license disqualification.

[¶17]   Mr. Flauding appealed the OAH decision to the district court, and asked that court to find that the arresting officer unreasonably interfered with his right to obtain an independent test as he had claimed before the OAH.  The district court found the OAH's

3

findings to be supported by substantial evidence, upheld the admissibility of the BAC evidence, and affirmed the OAH's decision. Mr. Flauding timely appealed.

## STANDARD OF REVIEW

[¶18] When we consider an appeal from a district court's review of an administrative agency's decision, we examine the case as if it came directly from the agency, giving no deference to the district court's decision. *Casiano v. State ex rel. Wyoming Dep't of Transportation*, 2019 WY 16, ¶ 6, 434 P.3d 116, 119 (Wyo. 2019*); Morris v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2017 WY 119, ¶ 23, 403 P.3d 980, 986 (Wyo. 2017). The Wyoming Administrative Procedure Act governs our review:

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> > (i) Compel agency action unlawfully withheld or unreasonably delayed; and
> >
> > (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
> >
> > > (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
> > >
> > > (B) Contrary to constitutional right, power, privilege or immunity;
> > >
> > > (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
> > >
> > > (D) Without observance of procedure required by law; or
> > >
> > > (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16-3-114 (LexisNexis 2021).

[¶19] Whether Mr. Flauding was afforded his statutory and due process rights is a mixed question of fact and law. *Johnson v. State ex rel. Wyo. Dep't of Transp.* (*Johnson II*), 2021 WY 116, ¶ 10, 497 P.3d 895, 899 (Wyo. 2021) (citing *Painter v. Hallingbye*, 2021 WY 78, ¶ 11, 489 P.3d 684, 689 (Wyo. 2021)). We apply the substantial evidence standard of review to an agency's findings of fact. *Mirich v. State ex rel. Bd. of Trustees of Laramie Cty. Sch. Dist. Two*, 2021 WY 32, ¶ 16, 481 P.3d 627, 632 (Wyo. 2021). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Sweetalla v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2019 WY 91, ¶ 18, 448 P.3d 825, 830 (Wyo. 2019) (quoting *Worker's Comp. Claim of Bailey v. State ex rel. Dep't of Workforce Servs.*, 2015 WY 20, ¶ 10, 342 P.3d 1210, 1213 (Wyo. 2015)). "Findings of fact are supported by substantial evidence if, from the evidence preserved in the record, we can discern a rational premise for those findings." *Id.* (quoting *Worker's Comp. Claim of Bailey*, ¶ 10, 342 P.3d at 1213).

[¶20] We defer to the administrative agency's factual findings and determination as to the credibility of witnesses unless they are clearly contrary to the overwhelming weight of the evidence in the record. *Camacho v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2019 WY 92, ¶ 23, 448 P.3d 834, 843 (Wyo. 2019); *Matter of Claim of Rogers v. Russell Constr. Co., Inc.*, 2016 WY 80, ¶ 15, 376 P.3d 1172, 1175 (Wyo. 2016). Whether we agree with the outcome of an agency's decision is irrelevant—we review an agency's findings of fact only to determine if it could reasonably conclude as it did. *Johnson II*, ¶ 11, 497 P.3d at 900 (quoting *Painter*, ¶ 11, 489 P.3d at 689).

[¶21] Our standard of review of an agency's conclusions of law is de novo. "We will affirm an agency's legal conclusion only if it is in accordance with the law." *Casiano*, ¶ 8, 434 P.3d at 120 (quoting *Lietz v. State ex rel. Dep't of Fam. Servs.*, 2018 WY 127, ¶ 11, 430 P.3d 310, 314 (Wyo. 2018)). We do not defer to the agency's legal conclusions, and "we will correct any error made by the agency in either interpreting or applying the law." *Id.* (quoting *Bowen v. State, Dep't of Transp.*, 2011 WY 1, ¶ 7, 245 P.3d 827, 829 (Wyo. 2011)).

## **DISCUSSION**

[¶22] Wyoming's implied consent statute provides that when driving on a public street or highway a person "is deemed to have given consent, subject to the provisions of [Wyo. Stat. Ann. §§ 31-6-101 through 31-6-108], to a chemical test or tests of his blood, breath or urine for the purpose of determining the alcohol concentration." Wyo. Stat. Ann. § 31-6-102(a)(i) (LexisNexis 2021).

> (ii) For tests required under [Wyo. Stat. Ann. §§ 31-6-101 through 31-6-108], **the arrested person shall be advised that:**

5

(B) If the results of the test indicate the person is under the influence of alcohol or a controlled substance, he may be subject to criminal penalties, his Wyoming driver's license or his privilege to operate a motor vehicle shall be suspended for ninety (90) days and he may be required to drive only vehicles equipped with an ignition interlock device;

(C) After undergoing all chemical tests required by the peace officer at a place and in a manner prescribed by and at the expense of the agency employing the peace officer, **the arrested person may go to the nearest hospital or clinic and secure any additional tests at his own expense[.]**

Wyo. Stat. Ann. § 31-6-102(a)(ii) (LexisNexis 2021) (emphasis added)

[¶23] Mr. Flauding contends that § 31-6-102(a)(ii)(C) required law enforcement to drive him to the nearest hospital to obtain an independent test even though he had no means to pay for the test and the hospital had indicated that it would not perform it without payment in advance. He further contends that he was denied a meaningful opportunity to arrange for an independent test when law enforcement failed to help him locate his wallet, and when it did not give him access to a telephone to arrange for his own test. Therefore, he concludes, the OAH should not have considered the results of the breathalyzer test. We disagree.

[¶24] In *Johnson II,* we recently addressed what is required of law enforcement when an arrested individual requests an independent chemical test.

> The statutory language is clear and unambiguous, and conveys a specific and obvious meaning: that a person undergoing a police-administered BAC test has a right to be informed he may obtain a test of his own, and if he requests such a test, he may go to the nearest hospital or clinic to seek one. If the legislature intended to obligate law enforcement officers to further facilitate a test, it would have said so. Read together, the statutes say he "*may go* . . . and secure *any* additional tests" but the "*failure or inability* to obtain an additional test" has no bearing on an officer's own test. It is not an officer's responsibility to ensure he obtains any test.

*Id.* ¶ 20, 497 P.3d at 902 (emphasis in original). We further held that substantive due process does not impose a duty on law enforcement to voluntarily arrange for independent testing, but instead that it "must not thwart an accused's attempts to make such arrangements." *Id.* ¶¶ 21-22, 497 P.3d at 902 (quoting *State v. McNichols*, 906 P.2d 329, 334 (Wash. 1995)).[1]

[¶25] In the earlier case of *Johnson v. State ex rel. Wyo. Dep't of Transp.* (*Johnson I*), 2020 WY 19, ¶ 11, 458 P.3d 40, 44 (Wyo. 2020), we held that it is within the OAH's implied authority to make a factual determination as to whether law enforcement either accommodated or interfered with an individual's right to an independent chemical test. The OAH hearing examiner in this case determined that the arresting officer did not unreasonably interfere with Mr. Flauding's right to an independent test:

> 28. The other dispositive issue in this case is whether or not the arresting officer and test administrator "unreasonably interfered with the Licensee's right to an independent test at his own expense. . . ." After the Licensee was advised as to the BAC breath results per the chemical test of his breath, and having been advised of his right to obtain, at his own expense, a separate and other chemical test, Licensee advised that he would like to obtain a blood test. However, Licensee did not have his wallet or the cash necessary to obtain the blood test which, per the officers' call to the hospital, would require a payment up front in the amount of $150.00. Given that fact, the blood test was not then available to Licensee and, as per Wyo. Stat. § 31-6-105(d), Licensee's failure or inability to obtain the additional test does not preclude this Office from considering the test results from the chemical test of Licensee's breath.

[¶26] We have reviewed the record and body camera footage, and we have found nothing to suggest that law enforcement interfered with Mr. Flauding's right to obtain an independent chemical test. Sergeant Robertson twice advised Mr. Flauding of that right,

---

[1] An independent chemical test can provide exculpatory evidence, so as a matter of due process officers are required to make "a reasonable effort to accommodate a motorist who [seeks] an independent test," and cannot frustrate attempts to obtain such a test. *See generally State, Dep't of Pub. Safety v. Shakespeare*, 4 P.3d 322, 325 n.13 (Alaska 2000) ("If not impracticable, police must accommodate a request for an independent blood test and assist an arrestee in obtaining one because of the arrestee's due process right to obtain exculpatory evidence."); *State v. Clark*, 762 P.2d 853, 855-56 (Mont. 1988) ("Our decisions do not mandate police officers to affirmatively act to obtain exculpatory evidence, but instead, to avoid interference with efforts on the part of the accused to obtain a sampling of his blood. While the police have no duty to assist an accused in obtaining independent evidence of sobriety, they cannot frustrate such an effort through either affirmative acts or their rules and regulations."); *see also* 7A Am. Jur. 2d *Automobiles* § 137 (Nov. 2021 update).

and that he could "be taken to a hospital or clinic to secure any additional tests at his own expense." Mr. Flauding was asked where his wallet was located, but he never told the arresting officer where it was. He was also asked for his wife's contact information, but he said he could not recall her phone number. Consequently, Sergeant Robertson arranged to have other officers dispatched to Mr. Flauding's home to try to locate his wife, but officers were unable to do so. Sergeant Robertson contacted the hospital, and it declined to bill for any testing. Under these circumstances, where Mr. Flauding had no means to pay for the test and the hospital would not perform it without advance payment, the officer was not required to transport him to the hospital, which would have been futile.[2] Law enforcement was willing to transport Mr. Flauding to the nearest hospital if there had been a reason to believe he could have obtained the test.[3]

[¶27] We also reject Mr. Flauding's argument that if law enforcement had driven him to the hospital, he might have been able to persuade personnel there to administer the test despite that fact that he had no funds to pay for it in advance. He presented no evidence that the hospital would have drawn and tested his blood for alcohol content without advance payment if he had been able to speak with someone directly despite what Sergeant Robertson had been told.

[¶28] Law enforcement did not prevent Mr. Flauding from obtaining an independent blood alcohol test, and his statutory and substantive due process rights were not violated. Accordingly, the OAH properly considered the results of the breathalyzer test, and it reasonably concluded as it did. *See* Wyo. Stat. Ann. § 31-6-105(d) (LexisNexis 2021) ("The failure or inability to obtain an additional test by a person does not preclude the admissibility in evidence of the test or tests taken at the direction of a peace officer.").

## CONCLUSION

[¶29] Substantial evidence supported the OAH's determination that Mr. Flauding's inability to obtain an independent blood alcohol test was not caused by law enforcement,

---

[2] We also reject Mr. Flauding's suggestion that he "lawfully conditioned his consent [to the breathalyzer test] upon his 'right' to obtain his own independent chemical tests pursuant to Wyoming Statute § 31-6-102(a)(ii)(C)." The record does not support the existence of a conditional agreement. Instead, after Mr. Flauding was informed of his rights, he asked why he was not given a breath test and Sergeant Robertson advised that was what he was trying to accomplish. Mr. Flauding agreed to take the breath test and voluntarily gave two breath samples. It was not until after he heard the results that he requested an independent test.

[3] Mr. Flauding contends that there should be a standardized policy for preservation of the right to request an independent chemical test. He further argues that "[t]he lack of a standardized policy to preserve independent biological samples for chemical testing must be construed against WYDOT." Mr. Flauding's argument contains no citation to relevant authority or cogent analysis, and we therefore will not address it further. *See WyoLaw, LLC v. Off. of Att'y Gen., Consumer Prot. Unit*, 2021 WY 61, ¶ 37, 486 P.3d 964, 975 (Wyo. 2021) (citing *Harrison v. State*, 2020 WY 43, ¶ 2, 460 P.3d 260, 261 (Wyo. 2020) (Court will not consider arguments unsupported by cogent argument and relevant authority)).

but was a result of Mr. Flauding's inability to pay.  Since the arresting officer did not interfere with Mr. Flauding's right to obtain an independent chemical test, his statutory and due process rights were not violated.  Affirmed.