# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 91

APRIL TERM, A.D. 2024

August 27, 2024

DARREN J. GRAY,

Appellant
(Petitioner),

v.

STATE OF WYOMING, ex rel.
DEPARTMENT OF WORKFORCE
SERVICES, WORKERS' COMPENSATION
DIVISION,

Appellee
(Respondent).

S-24-0024

*Appeal from the District Court of Weston County*
*The Honorable Matthew F.G. Castano, Judge*

*Representing Appellant:*
> Donna D. Domonkos, Domonkos & Thorpe, LLC, Cheyenne, Wyoming.

*Representing Appellee:*
> Bridget Hill, Wyoming Attorney General; Mark Klaassen, Deputy Attorney General; Peter Howard, Senior Assistant Attorney General; Holli J. Welch, Senior Assistant Attorney General, Cheyenne, Wyoming.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]    Darren J. Gray suffered a heart attack while working for his employer on a road construction project near Sundance, Wyoming.  He applied to the Wyoming Workers' Safety and Compensation Division (Division) for workers' compensation benefits.  The Division denied his request.  After a contested case hearing, the Office of Administrative Hearings also denied the request.  The district court affirmed that decision.  We likewise affirm because Mr. Gray did not meet his burden of proof to show his work exertion was unusual or abnormal under Wyo. Stat. Ann. § 27-14-603(b)(ii) (2023).

## *ISSUE*

[¶2]    While Mr. Gray raised several issues, the single dispositive issue is whether the Hearing Examiner's decision was supported by substantial evidence.

## *FACTS*

[¶3]    In April 2022, Mr. Gray began working for Keyhole Technologies, a company that provides on-site traffic control for road construction projects.  On his third day of work, Mr. Gray began the day assembling some equipment, filling sandbags, and driving a traffic-control truck behind the sign crew.  The sign crew was a different work group that Mr. Gray's crew supported in various tasks.  Later that morning, Mr. Gray's supervisor instructed him to help the sign crew clear ice, mud, and dirt from hollow, square metal tubes used for mounting road signs.  Each bar weighs about 20 lbs.  Mr. Gray drilled into the holes in the bottom of the bar to loosen the debris.  Then he would lift the bar above his head and slam it to the ground repeatedly.  Mr. Gray performed the task for about 45 minutes before he called his supervisor to report that he felt weak.  At his request, Mr. Gray was taken to the local hospital.

[¶4]    Hospital staff determined Mr. Gray suffered a heart attack and transferred him by ambulance from Sundance, Wyoming to another hospital in Rapid City, South Dakota for further treatment.  It was not Mr. Gray's first cardiac event.  He had previous cardiac events that resulted in the placement of stents.

[¶5]    Mr. Gray and his employer reported the heart attack to the Division.  In May 2022, the Division denied Mr. Gray's request for benefits.  Mr. Gray timely appealed that decision.  The matter was referred to the Office of Administrative Hearings for a contested case hearing.

[¶6]    The Hearing Examiner determined the claim was not compensable because Mr. Gray did not meet his burden under the heart attack statute, Wyo. Stat. Ann. § 27-14-603(b)(ii), to prove his exertion the day of his heart attack was unusual or abnormal for his particular employment.  It also determined that Mr. Gray did not meet his burden to show

1

that the heart attack was caused by working conditions or aggravation of a pre-existing condition under Wyo. Stat. Ann. § 27-14-102(a)(xi)(F).

## STANDARD OF REVIEW

[¶7]    We examine this matter as if it came directly from the agency and give no deference to the district court's decision. *Bressler v. State ex rel. Dep't of Workforce Servs.*, 2023 WY 94, ¶ 12, 536 P.3d 224, 227–28 (Wyo. 2023) (quoting *Genner v. State ex rel. Dep't of Workforce Servs.*, 2022 WY 123, ¶ 12, 517 P.3d 1138, 1142 (Wyo. 2022)). Our review is governed by the Wyoming Administrative Procedure Act which, in pertinent part, requires us to set aside agency actions that are "not in accordance with law" or are "[u]nsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute." Wyo. Stat. Ann. § 16-3-114(c)(A), (E) (2023).

[¶8]    When an agency determines a claimant did not meet their burden of proof, as here, we must:

> decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it.

*Bailey v. State ex rel. Dep't of Workforce Servs.*, 2015 WY 20, ¶ 11, 342 P.3d 1210, 1213 (Wyo. 2015) (citation omitted).

[¶9]    Findings of fact are supported by substantial evidence "if there is relevant evidence in the record which 'a reasonable mind might accept in support of the agency's conclusion.'" *Nagel v. State ex rel. Dep't of Workforce Servs.*, 2024 WY 15, ¶ 11, 542 P.3d 622, 627 (Wyo. 2024) (citations omitted). While the substantial evidence standard of review applies to evidentiary findings after contested case proceedings, we review conclusions of law de novo. *Bressler*, 2023 WY 94, ¶ 13, 536 P.3d at 228 (citation omitted); Wyo. Stat. Ann. § 16-3-114(c) ("[T]he reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.").

## DISCUSSION

[¶10]   Wyoming's workers' compensation benefits are available after employment-related heart attacks that occur independent of another workplace injury only if certain criteria are met.[1]  Wyo. Stat. § 27-14-603(b).  The employee bears the burden to prove: (1) the heart attack occurred within 4 hours of the work event; (2) the claimant suffered an "actual period of employment stress clearly unusual to or abnormal for employees in that particular employment, irrespective of whether the employment stress is unusual to or abnormal for the individual employee"; (3) the causative exertion occurred during that period; and (4) medical causation.  Wyo. Stat. § 27-14-603(b); *Loomer v. State ex rel. Wyo. Workers' Comp. Div.*, 2004 WY 47, ¶ 24, 88 P.3d 1036, 1044 (Wyo. 2004) (citations omitted); *Sheth v. State ex rel. Wyo. Workers' Comp. Div.*, 11 P.3d 375, 379–80 (Wyo. 2000);  *State ex rel. Wyo. Workers' Compensation Div. v. Harris*, 931 P.2d 255, 258–59, 258 n. 2 (Wyo. 1997); *In re Desotell*, 767 P.2d 998, 1002 (Wyo. 1989).

[¶11]   This appeal centers around the second element—whether Mr. Gray's actual period of employment stress was "clearly unusual to or abnormal for employees in that particular employment, irrespective of whether the employment stress is unusual to or abnormal for the individual employee."  This is an objective test that looks at the general class of employment, not the subjective job expectations for that employee.  *Loomer*, 2004 WY 47, ¶¶ 17–19, 88 P.3d at 1042–43 (discussing the prior history of the statute and the legislature's replacement of the subjective test with an objective test); *Sheth*, 11 P.3d at 380 ("[T]his is an objective test and invokes the usual employment activities; it does not focus on the activities or characteristics of an individual employee."  (citations omitted));

---

[1] Wyo. Stat. Ann. § 27-14-603(b) provides:

> (b) Benefits for employment-related coronary conditions except those directly and solely caused by an injury, are not payable unless the employee establishes by competent medical authority that:
>
> > (i) There is a direct causal connection between the condition under which the work was performed and the cardiac condition; and
> >
> > (ii) The causative exertion occurs during the actual period of employment stress clearly unusual to or abnormal for employees in that particular employment, irrespective of whether the employment stress is unusual to or abnormal for the individual employee; and
> >
> > (iii) The acute symptoms of the cardiac condition are clearly manifested not later than four (4) hours after the alleged causative exertion.

*In re Desotell*, 767 P.2d at 1001–02 (discussing legislative amendments in 1977 that mandated the use of the objective test).

[¶12]  The record supports the Hearing Examiner's findings that the exertion Mr. Gray experienced the day of his heart attack was not clearly "unusual to or abnormal" for his type of employment.  According to Mr. Gray, he was hired as a flagger, although his supervisor testified he was employed as a laborer, or perhaps as a combination of positions including laborer, flagger, and pilot car driver.  A human resources form completed concurrent to Mr. Gray's hiring corroborates the supervisor's testimony and indicates Mr. Gray was hired as a "Labor[er]/Flagger/Pilot."  The record also includes the formal job descriptions for each of those positions.  As the Hearing Examiner found, each of the positions require employees to "[p]erform any and all tasks as requested by management," "perform all tasks assigned by supervisor," and be able to lift fifty pounds.

[¶13]  On the day of the heart attack, Mr. Gray was assigned a variety of tasks: fill sandbags, assemble equipment, drive a vehicle behind the sign crew, and then assist in emptying the metal pipes.  Mr. Gray asserts on appeal that slamming the pipes on the ground was a duty of the sign crew, not a duty of his crew, and therefore was unusual for his employment. The record belies that position. Mr. Gray's supervisor testified that while the sign crew did not normally require this kind of assistance to clear pipes, because that crew usually arrived at the job site with clean pipes, this task was a "normal thing" his crew would be tasked with to assist the sign crew when needed.  Mr. Gray was instructed that he could just drill the bases of the pipes to loosen the debris and have the sign crew slam the pipes on the ground, or he could choose to also slam the pipes on the ground.  The supervisor also demonstrated for Mr. Gray how to slam the pipes on the ground if he wanted to do that task.  The supervisor testified the activity was not an overexertion compared to other job duties for laborers or flaggers.

[¶14]  Mr. Gray asserts the testimony of the independent medical examiner, Dr. Yussman, established that the exertion from slamming pipes on the ground was unusual.  Dr. Yussman testified about the physical stressors manual labor involves and stated that if slamming bars was not a normal job duty, then it would be unusual.  However, Mr. Yussman also testified "I do not know if that was unusual for him to be performing that kind of work . . . I had an assumption, whether right or wrong, that if you apply for a manual labor job that it's not going to be unusual for you to perform that kind of work."  He also acknowledged Mr. Gray's self-report about exertion that day but testified that "I don't know what a normal day of that type of work would have been," "trying to figure out whether this was a usual or unusual situation is not for a cardiologist to determine," and that Mr. Gray likewise reported that "he didn't know what the job duties quite were."

[¶15]  Mr. Gray invites us to reweigh Dr. Yussman's testimony against the other evidence in the record, which is not our task. *Bailey*, 2015 WY 20, ¶ 11, 342 P.3d at 1213 (citation omitted).  Rather, the Hearing Examiner's decision remains supported by substantial

evidence if it explained the reasons for disregarding certain evidence and its conclusion was not contrary to the overwhelming weight of the evidence. *Id.* Here, the Hearing Examiner determined Dr. Yussman "did not provide an opinion that the work activities were unusual," discounting the testimony on that point as a qualified opinion. The record supports that analysis. Dr. Yussman's testimony was equivocal—rather than establishing that the work activity was unusual, his testimony established he could not reasonably opine on what was usual or unusual for Mr. Gray's employment.

[¶16] Under the objective test to establish the second element under the heart attack statute, Wyo. Stat. Ann. § 27-14-603(b)(ii), Mr. Gray's activities were consistent with the job duties of similarly-situated employees, as tasks assigned by his supervisor and involving lifting up to fifty pounds. The supervisor's testimony established this task was a "normal thing" for his crew to assist the sign crew as needed. Based on the written job descriptions and the testimony of the supervisor about job duties and expectations for laborers and flaggers, the Hearing Examiner's finding that Mr. Gray's exertion was not "clearly unusual to or abnormal" for this type of employment was based on relevant evidence which a reasonable mind might accept and is adequate to support the agency's conclusion.

[¶17] Mr. Gray also asserts the Hearing Examiner erred as a matter of law when it determined he failed to meet his burden of proof to show compensability for a pre-existing condition. We briefly acknowledge this reviewable issue but decline to consider it in this case. Wyo. Stat. Ann. § 27-14-102(a)(xi)(F) excludes pre-existing conditions from the definition of "injury" but compensation remains available if work activities materially aggravate a pre-existing condition resulting in an injury. *Valencia v. State ex rel. Dep't of Workforce Servs.*, 2024 WY 29, ¶ 27, 545 P.3d 415, 424 (Wyo. 2024) (citations omitted); *Bailey*, 2015 WY 20, ¶¶ 15–16, 342 P.3d at 1214. In some states, heart attacks are treated differently than other "injuries" and whether pre-existing condition analyses apply in heart attack cases depends on the language used in the pertinent statutes. 1 *Modern Workers Comp.* § 109:17 (June 2024 update). We have not previously addressed the overlap, if any, between Wyoming's heart attack statute and the pre-existing condition analysis. This would be a question of statutory interpretation for the Court and is within the scope of our review to set aside agency actions not in accordance with law. *Bressler*, 2023 WY 94, ¶ 13, 536 P.3d at 228 (citation omitted); Wyo. Stat. Ann. § 16-3-114(c). However, given our dispositive determination that the Hearing Examiner's decision under the heart attack statute was supported by substantial evidence, our opinion on whether a pre-existing condition analysis should apply would be strictly advisory. As such, we leave this statutory interpretation issue as one to resolve another day. *See Powder River Basin Res. Council v. Wyoming Oil & Gas Conservation Comm'n*, 2014 WY 37, ¶ 35 n.7, 320 P.3d 222, 232 n.7 (Wyo. 2014).

***CONCLUSION***

[¶18] The Hearing Examiner's conclusion that Mr. Gray's exertion the day of his heart attack was not "clearly unusual to or abnormal for employees in that particular employment, irrespective of whether the employment stress is unusual to or abnormal for the individual employee" under Wyo. Stat. Ann. § 27-14-603(b)(ii) is supported by substantial evidence. The Hearing Examiner's order denying Mr. Gray's request for benefits is therefore affirmed.